**KESSLER TOPAZ MELTZER
 & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:   (415) 400-3000
Fax:   (415) 400-3001

*Counsel for Plaintiff Peter A. Kissler*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| PETER A. KISSLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DOXIMITY, INC., JEFFREY TANGNEY, and ANNA BRYSON,<br><br>Defendants. | Case No. 3:24-cv-02281<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Peter A. Kissler ("Plaintiff"), by and through his counsel, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Doximity, Inc. ("Doximity" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Doximity common stock between February 9, 2022, and April 1, 2024, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2. Doximity, a Delaware corporation with its principal executive offices in San Francisco, California, operates a digital platform that provides connections between, medical information to, and patient scheduling tools for medical professionals.  Doximity serves more than 2 million registered members, including over 80% of U.S. physicians and over 50% of nurse practitioners and physician assistants.  Doximity frequently is referred to as the LinkedIn for doctors.  The platform is free to its medical professional members (with a few small exceptions) and generates revenue largely from "customers" such as pharmaceutical companies and health systems, by allowing them to promote their services and products to platform users.  Doximity charges a subscription fee for its services and offers multiple "modules" to allow its customers to advertise their products.  The Company also offers hiring services to its customers.  Doximity's common stock trades in the United States on The New York Stock Exchange ("NYSE") under the ticker symbol "DOCS."

3. The Class Period begins on February 9, 2022, to coincide with the release of the Company's quarterly financial results for the third quarter of fiscal year 2022, which ended December

31, 2021, after the market closed the night prior. During the accompanying quarterly investor earnings call afterhours on February 8, 2022, Defendant Anna Bryson, the Company's Chief Financial Officer, emphasized that "marketers have been able to witness the value of running these digital programs" and that it was this "value that's the main reason we're seeing this sustained demand from our customers and not new [COVID] variants." To this end, Defendant Bryson further assured investors that the Company was "focused on . . . really building a business that can provide years of sustainable growth with high margins."

4.  Throughout the Class Period, Defendants continued to tout the sustainability of the Company's business prospects while also downplaying the importance of customer upsell rates on the Company's financial performance. For example, during the Company's second quarter fiscal year 2023 investor earnings call on November 10, 2022, Defendant Jeffrey Tangney, the Company's Chief Executive Officer, reassured investors that "pharma's doing quite well" amid investor concerns that macroeconomic headwinds would substantially impact Doximity' financial performance. Defendant Bryson similarly emphasized that the Company's sales pipeline has "bigger dollar deals than we've seen before" and, to alleviate investor concerns, explained that, while Doximity's upsell rates were "a little below historical norms," customer upsells are "not a significant portion of our revenue."

5.  Similarly, in February 2023, Defendant Bryson specifically noted that Doximity is "less dependent on major upsell than prior years," and in May 2023, Defendant Bryson indicated that the Company was being conservative with its financial guidance to the market by assuming upsell rates of "half of our historical [upsell] rate."

6.  Notwithstanding Defendants' claims regarding the sustainability of Doximity's growth and profitability, Plaintiff and other members of the class began to learn the truth about the Company on August 8, 2023, when, after the market closed, Doximity reported its financial results for the first quarter of fiscal year 2024, which ended June 30, 2023. While the Company exceeded its quarterly revenue and adjusted EBITDA guidance for the first quarter, the Company provided disappointing guidance for the second quarter of fiscal year 2024 and slashed its guidance for the full fiscal year 2024. Specifically, Doximity announced that it expected fiscal year 2024 revenue of

between $452 million and $468 million (down from prior guidance of between $500 million and $506 million, and representing year-over-year revenue growth of only between 7.9% and 11.7%), and adjusted EBITDA of between $193 million and $209 million (down from prior guidance of between $216 million and $222 million, and representing year-over-year adjusted EBITDA growth of only between 4.9% and 13.6%).

7. In conjunction with the disappointing guidance, Doximity announced that it would reduce its workforce by approximately 10%. The Company further noted that the workforce reduction is expected to cost approximately $8 million to $10 million.

8. In explaining this about-face, Defendant Bryson admitted that the Company's "major upsells have materially underperformed, and we expect this to continue in the near term." Defendant Tangney further explained that Doximity failed to close sales due, in part, to "fewer face-to-face meetings with our clients."

9. On this news, the price of Doximity common stock declined $7.49 per share, or nearly 23%, from a close of $32.79 per share on August 8, 2023, to close at $25.30 per share on August 9, 2023.

10. Investors learned more about the unsustainability of the Company's revenue growth on April 1, 2024, when Jehoshaphat Research published a report alleging, among other things, that "Doximity's underlying sales . . . are *declining* at a negative -3-6% rate, but that this decline has been masked through accelerated revenue recognition." (Emphasis in original).

11. On this news, the price of Doximity common stock declined $1.11 per share, or more than 4% over two trading-days, from a close of $26.91 per share on March 28, 2024, to close at $25.80 per share on April 2, 2024.

12. This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants repeatedly touted the Company's business prospects and the sustainability of the Company's revenue growth and profitability, while downplaying the impact of competition and tightening macroeconomic conditions on the Company

and Doximity's reliance on "upselling" products and services (such as additional advertising) to existing customers to sustain the Company's performance and future growth.

13. As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.   JURISDICTION AND VENUE

14. Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

15. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Doximity's principal executive offices are in San Francisco, California, and because many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

17. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   PARTIES

18. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Doximity common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

19. Defendant Doximity is a Delaware corporation, with its principal executive offices at 500 3rd St., Suite 510, San Francisco, California, 94107.

20. Defendant Jeffrey Tangney is the Company's co-founder and Chief Executive Officer, and chairs the Company's Board of Directors.

21. Defendant Anna Bryson is the Company's Chief Financial Officer.

22. Defendants Tangney and Bryson are collectively referred to herein as the "Individual Defendants."

23. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Doximity's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

24. Doximity and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.  SUBSTANTIVE ALLEGATIONS

### A.  Background

25. Doximity is a Delaware corporation with its principal executive offices in San Francisco, California. Its business is based upon a social media-like platform that provides connections between medical professionals, offers medical professionals valuable information to assist them in treating patients, and helps medical professionals schedule patient visits. The Company has experienced strong growth since its founding in 2010, increasing its membership from 10% of all U.S. physicians in 2013, to over 80% today. Doximity currently has more than 2 million medical professional members. As the platform's membership increased, it became more valuable to customers (pharmaceutical companies and health systems) to promote their products and services on Doximity's platform, helping to increase Doximity's annual revenue from $86 million in fiscal year 2019, to $419 million in fiscal year 2023.

26. The Company primarily generates revenue from pharmaceutical companies and health systems that utilize the Company's "Marketing Solutions" and "Hiring Solutions" products. As part

of its Marketing Solutions business, Doximity provides pharmaceutical manufacturers with access to Doximity's members to deliver educational content about their products, including information about what their medication does and who it treats, who is the right patient, and how they can pay for it. The Company's Hiring Solutions permit customers and recruiters to access the Company's professional tools to send messages for talent sourcing and to share job postings. Both the Marketing Solutions and Hiring Solutions use a subscription-based revenue model.

27. Customers pay for a subscription for specific modules, which are delivered monthly to a consistent number of targeted Doximity members. "Pricing [for the Company's Marketing Solutions] is based on the number and composition of the targeted Doximity members, and on the specific modules purchased." As discussed herein, the Company's business plan involves "upselling" additional modules to existing customers or providing services to additional aspects of a customer's business. For example, the Company has explained that its "existing customers represent a significant opportunity to grow our platform" as "[m]any of our large pharmaceutical customers initially run marketing programs for a certain number of brands but have a track record of increasing their spend with us both by adding modules and expanding across more of their portfolio of brands."

28. The Company's common stock trades on the NYSE under the ticker symbol "DOCS."

**B.      Defendants' False and Misleading Statements**

29. The Class Period begins on February 9, 2022, to coincide with the release of the Company's quarterly financial results for the third quarter of fiscal year 2022, which ended December 31, 2021, after the market closed the night prior. Among other things, Doximity reported quarterly revenue of $97.9 million and adjusted EBITDA of $47 million, representing year-over-year growth of 67% and 119%, respectively.

30. During the accompanying quarterly investor earnings call afterhours on February 8, 2022, Defendant Bryson emphasized that "marketers have been able to witness the value of running these digital programs" and that it was this "value that's the main reason we're seeing this sustained demand from our customers and not new [COVID] variants." To this end, Defendant Bryson further assured investors that the Company was "focused on . . . really building a business that can provide years of sustainable growth with high margins."

31. On May 17, 2022, Doximity announced its quarterly financial results for the fourth quarter and full fiscal year 2022. Among other things, Doximity reported quarterly revenue of $93.7 million and adjusted EBITDA of $39.4 million, representing year-over-year growth of 40% and 47%, respectively, and full fiscal year revenue of $343.5 million and adjusted EBITDA of $150.3 million, representing year-over-year growth of 66% and 132%, respectively.

32. During the accompanying investor earnings call that same day, Defendant Bryson reiterated that the Company "remain[s] focused on building a meaningful business of scale with not only sustainable long-term growth, but also attractive margins." Critically, Defendant Bryson explained that Doximity's "business exhibits a number of key strengths, which we believe position us to drive sustainable growth and profitability even in an uncertain market environment."

33. Throughout the Class Period, Defendants continued to tout the Company's business prospects and the sustainability of the Company's revenue growth and profitability, while downplaying the impact of tightening macroeconomic conditions on the Company. For example, on November 10, 2022, the Company reported quarterly revenue of $102.2 million and adjusted EBITDA of $46 million, representing year-over-year growth of 29% and 40%, respectively. The Company also affirmed its full-year revenue guidance of between $424 million and $432 million (representing year-over-year revenue growth of between 23.4% and 25.8%), and adjusted EBITDA guidance of between $178 million and $186 million (representing year-over-year adjusted EBITDA growth of between 18.4% and 23.8%).

34. During the Company's quarterly investor earnings call held later that day, Defendant Tangney assured investors that concerns about "pharma digital marketing . . . return[ing] to its pre-pandemic ways" were "overblown."

35. Defendant Tangney also touted the Company's long-term growth strategy and the Company's unique position to attract pharmaceutical marketing clients, even in difficult economic environments, explaining:

> Especially in leaner times, pharma is incredibly measured and disciplined about ROI. Generally, they strive for a 3:1 return on their marketing dollar, and they will continue to invest at that level. Some digital solutions will cut the mustard and some won't, which lead me

> to perhaps the best out of this call. For the third-party studies completed over the last 6 months, our median pharma ROI has improved to over 15:1. That's well above the 10:1 we cited last year in our S-1.
>
> This is for a host of good reasons, including our increased reach and personalization. Our all-time pharma median ROI now stands at 11:1 .... An 11:1 ROI implies that all else equal, if we theoretically did nothing but raise prices, then we would have 7 years of 20-plus percent growth ahead of us before our ROI falls to 3:1. That's the baseline aperture through which we view our long-term growth rate as we've obviously many, many other vectors to grow beyond price.

36. Defendant Bryson echoed these statements by further assuring investors that "[w]e are in the early innings of a large and growing market opportunity, aided by a secular shift to digital" and that "we are uniquely advantaged to gain market share as these budgets continue to shift to digital over the next decade." Defendant Bryson also explained that the Company's revenue was not particularly dependent on upselling marketing contracts during the year, because upselling is "really not a significant portion of our revenue" and that "the majority of our year in a given fiscal year is coming from these core renewals."

37. Moreover, Defendant Bryson expressed optimism about the Company's sales pipeline, assuring investors that "one of the good things about this year is that we've begun to have discussions with our clients earlier than ever, and what that's resulted in for us [is a] pipeline with bigger dollar deals than we've seen before." Accordingly, Defendant Bryson explained that "as far as it comes to our opportunity to cross-sell and upsell in this renewal cycle, ***we feel incredibly optimistic and positive on what we're going to see there***" (emphasis added).

38. On November 10, 2022, Doximity also filed its quarterly financial results for the second quarter of fiscal year 2023 on Form 10-Q with the SEC. In the Form 10-Q, Doximity noted that "[w]hile certain of the COVID-19 pandemic-related trends underlying our positive performance may not continue after the pandemic eases, we believe that certain key underlying trends have been accelerated and will persist long after the pandemic ends."

39. Then, on February 9, 2023, the Company announced its financial results for the third quarter of fiscal year 2023, which ended December 31, 2022. In connection with this announcement,

1   the Company issued preliminary financial guidance for fiscal year 2024 of revenue greater than $500 million (representing year-over-year growth of more than 19%) and adjusted EBITDA margin of 43% or greater.

40.   On February 9, 2023, Doximity also filed its quarterly financial results for the third quarter of fiscal year 2023 on Form 10-Q with the SEC.  The Form 10-Q again explained that, "[w]hile certain of the COVID-19 pandemic-related trends underlying our positive performance may not continue after the pandemic eases, we believe that certain key underlying trends have been accelerated and will persist long after the pandemic ends."

41.   During the Company's quarterly investor earnings call held that same day, Defendant Bryson discussed the Company's expected upsell rates, stating that "we are assuming a similar percentage of midyear upsell to what we saw in fiscal 2023, which was about half of our historical upsell rate."  Critically, Defendant Bryson suggested that, if anything, "outperform[ing]" on upsell activity would contribute to even stronger results because of the Company's purportedly "conservative" financial guidance.  Moreover, Defendant Bryson reassured investors that the Company is "less dependent on major upsell than prior years" and, instead, is "more dependent on our core annual renewal cycle, which continues to perform really well for us" and, "this year[,] was incredibly strong."

42.   On May 16, 2023, the Company announced its financial results for the fourth quarter of fiscal year 2023 and full fiscal year 2023, including fiscal year 2023 revenue of $419.1 million (representing 22% year-over-year revenue growth) and adjusted EBITDA of $184 million (representing 22% year-over-year adjusted EBITDA growth).  Doximity also increased its fiscal year 2024 revenue guidance to between $500 million and $506 million (representing year-over-year revenue growth of 19.3% and 20.7%), and announced fiscal year 2024 adjusted EBITDA guidance between $216 million and $222 million (representing year-over-year adjusted EBITDA growth of 17.4% and 20.7%).

43.   During the Company's quarterly investors earnings call held that same day, Defendant Bryson noted that "subscription revenue, which comprises 93% of our total revenue, saw growth reaccelerate to 20% in Q4," and assured investors that, "[w]hile the macro environment remains

1   uncertain, we are encouraged to see this positive momentum in our core marketing business."
2   Defendant Bryson also explained that, as of the earnings call, "we have over 65% of our annual
3   subscription-based revenue guidance under contract" and "expect another 30% to come from
4   renewals and upsells, and the remaining 5% to come from new customers." Given the "continued
5   macro uncertainty," Defendant Bryson explained that Doximity, consistent with earlier
6   representations, was "modeling a similar percentage of midyear upsell to last year, which is about
7   half of our historical rate." Defendant Tangney similarly noted that "we're prepared for low upsells."

8         44.    On June 6, 2023, the Company held its Inaugural Investor Day conference, during
9   which Defendant Bryson assured investors that the Company has "significant potential for future
10  growth within customers that we already work with" by upselling additional products and services.
11  Specifically, Defendant Bryson asserted that "between the shift to digital, the growing number of
12  mega brands and the new budgets we're unlocking in customers that we already have deep
13  relationships with, we believe we are well positioned to achieve this $1 billion-plus targets in fiscal
14  2028."

15        45.    The above statements contained within paragraphs 29-44 were materially false and
16  misleading, and failed to disclose material adverse facts about the Company's business and
17  operations. Specifically, Defendants repeatedly touted the Company's business prospects and the
18  sustainability of the Company's revenue growth and profitability, while downplaying the impact of
19  competition and tightening macroeconomic conditions on the Company and Doximity's reliance on
20  "upselling" products and services (such as additional advertising) to existing customers to sustain the
21  Company's performance and future growth.

22        **C.    The Truth Emerges**

23        46.    Investors began to learn the truth about the Company's business prospects on August
24  8, 2023, when, after the market closed, the Company reported its financial results for the first quarter
25  of fiscal year 2024, which ended on June 30, 2023. While the Company exceeded its quarterly
26  revenue and adjusted EBITDA guidance for the first quarter, the Company provided disappointing
27  guidance for the second quarter of fiscal year 2024 and slashed its guidance for the full fiscal year
28  2024. Specifically, Doximity announced that it expected fiscal year 2024 revenue of between $452

million and $468 million (down from prior guidance of between $500 million and $506 million, and representing year-over-year revenue growth of between 7.9% and 11.7%), and adjusted EBITDA of between $193 million and $209 million (down from prior guidance of between $216 million and $222 million, and representing year-over-year adjusted EBITDA growth of between 4.9% and 13.6%).

47. During the Company's quarterly investor earnings call held that same day, Defendant Tangney admitted that, "[d]espite a record upfront this winter, our upsell close rate fell short in June and July" and, "after growing steadily for a decade, our upsells have now slowed for 2 years in a row." Moreover, despite prior assurances that the effect of "macro headwinds" on the pharmaceutical industry were "overblown," Defendant Tangney revealed that "[p]harma's shift to digital has slowed" and that the Company "estimate[s] digital pharma has grown at half the low-teens growth rate that we and eMarketer predicted last year." Defendant Tangney also acknowledged that there were "fewer face-to-face meetings with our clients" as customers did not schedule in-person meetings with sales representatives—which are crucial to Doximity's upselling model—and different forms of advertising received the "incremental spend" from pharmaceutical advertisers rather than Doximity's products. According to Defendant Tangney, these issues surrounding the inability to successfully upsell necessitated reducing the Company's financial guidance and cutting approximately 10% of its workforce.

48. Defendant Bryson echoed Defendant Tangney's explanations and elaborated that "our major upsells have materially underperformed, and we expect this to continue in the near term." Defendant Bryson noted that, despite seeing upsell rates half of the Company's historical rates this year, upsell rates have declined further, causing "a sizable impact starting in Q2." Critically, further declining upsell rates called into question Doximity's revenue for the remainder of fiscal year 2024, with Defendant Bryson stating that "we continue to have strong visibility into the roughly 65% of revenue booked to start the year, but the remaining 35% has become increasingly difficult to predict." When asked by a Needham & Company, LLC analyst about weakness across Doximity's product areas, Defendant Bryson admitted that "the weakness really is in our mid-tier upsells." In response to another analyst question, Defendant Bryson further acknowledged that the weakness in upsells was

not merely reduced growth, but "as our upsells are concerned . . . they declined on an absolute dollar basis."

49. Given the misalignment between the Company's sales approach and client needs, Defendant Tangney announced that the Company "made the difficult decision to let 10% or roughly 100 of our talented employees go," with the "heaviest [cuts] in our operations and client service teams where live client visits, printing and manual HML edits are just less needed than in the past." According to Defendant Tangney, the reductions would cost "approximately $8 million to $10 million."

50. On this news, the price of Doximity common stock declined $7.49 per share, or nearly 23%, from a close of $32.79 per share on August 8, 2023, to close at $25.30 per share on August 9, 2023.

51. Investors learned more about the unsustainability of the Company's revenue growth on April 1, 2024, when Jehoshaphat Research published a report alleging, among other things, that "Doximity's underlying sales . . . are *declining* at a negative -3-6% rate, but that this decline has been masked through accelerated revenue recognition." (Emphasis in original). Specifically, the report alleges that Doximity's revenue growth "has been primarily driven by pulling forward revenues from the future, rather than by [sustainable,] underlying business growth," and that "Doximity has been recognizing previously-deferred revenues earlier and earlier within any given period" as a means to drive reported revenue growth. In analyzing Doximity's "underlying" revenues, Jehoshaphat Research further concluded that Doximity stopped consistently increasing "true" revenues in calendar year 2022 and had actually experienced "year-on-year declines in revenue in the last two consecutive quarters," presenting considerable challenges to Doximity's ability to generate sustainable revenue growth.

52. On this news, the price of Doximity common stock declined $1.11 per share, or more than 4% over two trading-days, from a close of $26.91 per share on March 28, 2024, to close at $25.80 per share on April 2, 2024.

## V. **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

53. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased or otherwise acquired Doximity common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of Doximity, and their families and affiliates.

54. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

55. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

   a. Whether Defendants violated the Exchange Act;

   b. Whether Defendants omitted and/or misrepresented material facts;

   c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

   d. Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

   e. Whether the price of Doximity common stock was artificially inflated; and

   f. The extent of damage sustained by members of the Class and the appropriate measure of damages.

56. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

57. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:24-cv-02281                                                                                                  13

## VI. APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE MARKET DOCTRINE

59. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. The omissions and misrepresentations were material;

   c. The Company's common stock traded on an efficient market;

   d. The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

   e. Plaintiff and the Class purchased Doximity common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

60. At all relevant times, the market for the Company's common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII. NO SAFE HARBOR

61. Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

62. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were

assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII. LOSS CAUSATION/ECONOMIC LOSS

63. Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. The price of Doximity common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Doximity common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX. ADDITIONAL SCIENTER ALLEGATIONS

64. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Doximity common stock during the Class Period.

## X. CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violations of Section 10(b) of the Exchange Act and**

**SEC Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

65. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

66. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Company common stock at

1  artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

67. Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

68. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act

### Against the Individual Defendants

69. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

70. The Individual Defendants acted as controlling persons of Doximity within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had

the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

72. As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act. As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Company common stock during the Class Period.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b. Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Such other and further relief as the Court may deem just and proper.

## XII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: April 17, 2024                    Respectfully submitted,

**KESSLER TOPAZ MELTZER
  & CHECK, LLP**

*/s/ Jennifer L. Joost*
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104

| | |
|---|---|
| Tel: | (415) 400-3000 |
| Fax: | (415) 400-3001 |

-and-

NAUMON A. AMJED
(namjed@ktmc.com)
RYAN T. DEGNAN
(rdegnan@ktmc.com)
JONATHAN Z. NAJI
(jnaji@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel:   (610) 667-7706
Fax:   (610) 667-7056

*Counsel for Plaintiff Peter A. Kissler*